# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :

In re: AVANDIA MARKETING, SALES      :      **MDL No. 1871**
PRACTICES AND PRODUCTS      :      **07-md-1871**
LIABILITY LITIGATION      :
————————————————————:
    :
**THIS DOCUMENT APPLIES TO:**      :
    :
**See Attachment A**      :
————————————————————:

## <u>MEMORANDUM OPINION</u>

**RUFE, J.**                                                         **May 15, 2014**

Before the Court are Motions to Remand 53 cases to California state courts.[1] The cases at issue are multi-plaintiff claims initially filed in California state courts against Defendants GlaxoSmithKline ("GSK") and McKesson, alleging that they suffered injuries caused by use of the drugs Avandia, Avandamet, and Avandaryl (hereinafter "Avandia"). The thousands of plaintiffs in these cases live all over the country, but at least one plaintiff in each case is a resident of California. GSK manufactures Avandia, and it is alleged that GSK failed to provide adequate warnings that use of Avandia increases the risk of heart attack and other injuries. McKesson is a drug distributor, and one of several distributors of Avandia.

Defendants removed the cases to federal courts in California, and Plaintiffs filed motions to remand. These cases were then transferred into MDL 1871 for pretrial proceedings. Plaintiffs re-noticed and re-filed the pending motions to remand, and they have been fully briefed for this Court. These cases present the difficult question of when following the complex rules of diversity

---

[1] The remand motions were filed by three law firms: two were filed by Restaino Siler LLC on behalf of 165 plaintiffs, 18 were filed by Napoli Bern Ripka Shkolnik & Associates LLP ("Napoli Bern"), on behalf of 837 Plaintiffs, and 33 were filed by Salim Beasley LLC, on behalf of 2,008 Plaintiffs.

jurisdiction and removal crosses the line that divides permitted gamesmanship from prohibited conduct. All of the cases that Plaintiffs seek to remand contain dozens of plaintiffs, but fewer than one hundred (in total there are 3,010 plaintiffs before the Court, or about 57 per case). Each case names at least one California plaintiff and McKesson, a California resident, as defendant. Eight of the cases contain one (and only one) Delaware plaintiff, and all 53 cases name GSK, a Delaware resident, as defendant.

*Overview of Applicable Jurisdictional Rules*

The motions concern several aspects of the Court's diversity jurisdiction, some familiar to the federal courts and others that arise only rarely and recently. An overview of the requirements to invoke this Court's diversity jurisdiction helps to frame this Opinion.

In order to bring or remove a case to federal court, the proponent of federal jurisdiction bears the burden of establishing that the court has constitutional and statutory jurisdiction. There is no question that this Court has constitutional jurisdiction pursuant to Article III, Section 2, Clause 7, as this is a case "between citizens of different states." That provision has been read to require minimal diversity, that is, at least one plaintiff must be diverse from one defendant.

The Judiciary Act of 1789 ordained and established the federal district courts, including this one, and, as amended, it vests in the district courts jurisdiction over cases "between citizens of different States" where the amount in controversy is greater than $75,000.[2] Despite the similarity in the words of the Constitution and the statute, section 1332(a)(1) has long been read to require *complete* diversity, that is to say, every plaintiff must be a citizen of a different state from every defendant.

In multiple-plaintiff cases, plaintiffs have some control over the presence or absence of complete diversity, and if there is an aggrieved plaintiff who is not diverse from a defendant, it

---

[2] 28 U.S.C. § 1332(a)(1).

may be desirable to the diverse plaintiffs to have the non-diverse plaintiff join in their suit to defeat complete diversity. Similarly, if there is a non-diverse defendant who may also be liable to the plaintiff, the plaintiff may seek to sue that defendant both to hold it liable and to defeat diversity. Such pleading is permitted with some limitations; for example, the joinder must not be fraudulent.

A further limitation on plaintiffs' ability to avoid federal court jurisdiction comes from the Class Action Fairness Act of 2005 ("CAFA"). Pursuant to that law, in a class action where the amount in controversy exceeds $5,000,000, there need be only minimal diversity for the court to have jurisdiction (and for the case to be removable to federal court by defendants). Section 1332(d)(11)(A) requires courts to treat "mass actions" as class actions, and section 1332(d)(11)(B) defines "mass actions."[3] It also limits federal jurisdiction over mass action plaintiffs so that courts may only adjudicate such a plaintiff's claim if that claim satisfies the $75,000 jurisdictional amount of section 1332(a). The law of fraudulent joinder and CAFA is discussed in greater detail below in connection with GSK's various arguments against Plaintiffs' remand motions.

*Applicable Removal Standards*

Grounds for removal of a civil action are set forth in 28 U.S.C. § 1441. Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."[4] Removal of a civil action from state to federal court is proper only if the action initially could have been brought in federal court.[5] The party removing a case has the burden to prove that federal jurisdiction is proper.[6]

Additionally, for removal based on diversity of citizenship to be proper, removal may not violate the forum defendant rule, which provides that "[a] civil action otherwise removable solely

---

[3] See discussion beginning at page 8, *infra*.
[4] *Boyer v. Snap –On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (internal quotation omitted).
[5] 28 U.S.C. § 1441(a).
[6] *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[7]

*Fraudulent Joinder of McKesson*

Plaintiffs argue that because defendant McKesson has its principal place of business in California, where each of these actions were filed, and because there are one or more California plaintiffs named in each suit, defeating complete diversity, removal was improper. They further argue that removal was improper under the forum defendant rule. GSK argues that removal was proper because McKesson was fraudulently joined, and therefore McKesson's citizenship can be ignored. Without McKesson, the forum defendant rule does not bar removal, nor does the lack of diversity between McKesson and the California plaintiffs.

GSK raised the argument of the fraudulent joinder of McKesson in response to motions to remand filed in 2008 also. At that time, based upon the record before it, the Court could not find that McKesson had been fraudulently joined.[8] However, as not one Plaintiff has sought any discovery or any recovery from McKesson in the intervening five years, GSK has asked the Court to again consider the possibility that Plaintiffs are fraudulently joining McKesson to defeat federal jurisdiction.

A defendant is fraudulently joined "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant" *or* where there is "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."[9] Although GSK argues fraudulent joinder on both grounds, the Court's earlier remand opinion reasonably found that Avandia plaintiffs may have colorable claims against McKesson under California law, and the

---

[7] 28 U.S.C. § 1441(b)(2).
[8] *In re: Avandia Mktg., Sales Practices and Products Liability Litig.*, 624 F. Supp. 2d 396 (E.D. Pa. 2009).
[9] *Boyer*, 913 F.2d at 111.

Court will not revisit that issue now. However, because of the intervening history in this case, the Court will now consider GSK's argument that plaintiffs in these newly filed cases have no genuine intention of prosecuting claims against McKesson. GSK notes that in the years since Avandia litigation began, plaintiffs have failed to treat McKesson as an actual defendant, by taking discovery and pursuing claims, notwithstanding the fact that 12,537 plaintiffs sued McKesson along with GSK for Avandia-related injuries. Moreover, GSK argued in a declaration attached to its brief, one of the firms whose remand motions are at issue here, Napoli Bern, currently has approximately 412 plaintiffs proceeding with Avandia claims in California state court, and yet had directed no discovery requests to named defendant McKesson in those suits.[10] GSK argues that there is no evidence that Napoli Bern would act any differently with regard to the 837 plaintiffs who are the subject of their motion to remand, should the Court remand the cases to California.

Plaintiffs did not address whether they had a genuine intention to prosecute the action against McKesson in their remand motions or their briefs. The Court therefore held a hearing to allow moving plaintiffs the opportunity to establish a good faith intention to prosecute claims against McKesson. At that hearing, only one of the three law firms indicated that it had propounded any discovery on McKesson, and Napoli Bern had served that discovery request on March 17, 2014, after the Court issued its notice for the hearing,[11] and more than a year after it had filed these lawsuits. Although counsel spoke of an intent to prosecute their claims against McKesson, they could not explain why they did not seek discovery from McKesson earlier in this litigation, especially given that general discovery from GSK has long been completed, both in this MDL and in the California Judicial Council Coordinated Proceeding ("JCCP"), *In re Avandia*

---

[10] As will be discussed below, the discovery that Napoli Bern propounded on McKesson, after GSK's opposition to the remand motion was filed and after our hearing was ordered, fails to represent a genuine attempt to hold McKesson liable to plaintiffs.

[11] The Court granted Napoli Bern permission to supplement the record after the hearing, with copies of the discovery requests propounded. Napoli Bern filed this supplemental information on April 25, 2014.

*Drug Litigation*, JCCP No. 4578.

Although the complaints allege that McKesson is a major, national distributor of Avandia, plaintiffs acknowledge that it is not the only distributor, and counsel for plaintiffs argued that drug distribution chains are complex, making it difficult to establish that McKesson distributed the Avandia used by their clients without discovery from McKesson. In its February 25, 2009 Opinion, this Court noted that to survive a motion for summary judgment, plaintiffs would need to conduct sufficient discovery to establish that individual plaintiffs had used Avandia distributed by McKesson. However, the discovery requests recently propounded by Napoli Bern focus on McKesson's efforts to study understand Avandia's risks, its efforts to warn consumers and physicians regarding Avandia's risks, and its gross revenue generated from Avandia sales; the discovery sought will not generate any information about the Avandia distribution process, from which Napoli Bern could attempt to establish that McKesson distributed the Avandia used by its clients.[12]  Neither Restaino Siler nor Salim Beasley has propounded any discovery requests at all. Although these cases are not at the summary judgment stage yet, they are mature enough for the Court to find a lack of genuine intent to proceed with claims against McKesson. The Court may thus disregard McKesson for purposes of determining whether the Court has jurisdiction. Accordingly, the Court holds that the forum defendant rule does not bar removal of these actions, and there is complete diversity between the California plaintiffs and the properly joined defendant, GSK.   The motions to remand will be denied, except as to those actions with Delaware plaintiffs, discussed below.

### *Misjoinder of Delaware Plaintiffs*

While the above analysis resolves the remand motion as to 45 of the filed cases, eight of the filed cases include one plaintiff who is a citizen of Delaware. As GSK is also a citizen of

---

[12] See MDL 1871, Doc. No. 3979.

Delaware,[13] the Court cannot exercise jurisdiction over these eight cases unless, as GSK urges, the

Delaware plaintiffs are severed based on the theory of misjoinder (or unless CAFA applies, as

discussed below). The doctrine of misjoinder of plaintiffs is not one which is universally accepted

by federal courts. However, in the absence of a ruling from the Third Circuit regarding misjoinder

of plaintiffs, the Court will act in accordance with its own prior opinions in this case,[14] and sever a

plaintiff only if it finds that there is "no reasonable basis for the joinder of that non-diverse plaintiff

with the other plaintiffs . . .[as] in reality there is no sufficient factual nexus among the claims to

satisfy the permissive joinder standard,"[15] and the misjoinder was egregious.[16] As the burden is

on GSK to demonstrate misjoinder,[17] the Court will only sever the Delaware plaintiffs if GSK can

demonstrate that they have no real connection to the action, and therefore their joinder has no

proper justification, but only serves to defeat removal, and should not be permitted.[18]

      As this action was filed in California state court, the joinder law of California guides the

Court's inquiry.[19] Under California's joinder rule, "[a]ll persons may join in one action as

plaintiffs if . . . [t]hey assert any right to relief . . . in respect of or arising out of the same

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact

---

[13] *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337 (3d Cir. 2013).

[14] *In re Avandia*, 624 F. Supp. 2d 396. *See also In re: Diet Drugs Prods. Liab. Litig.,* 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003); *In re Fosamax Prods. Liability Litig.*, No. 11-3045, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012), which apply the same rule, although they arrive at a different result.

[15] *In re: Diet Drugs Litig.,* 294 F. Supp. 2d at 673 (internal quotation omitted).

[16] *In re: Fosamax*, 2012 WL 1118780, at *3; *In re Diet Drugs Prods. Liab. Litig.*, 98-20478, 1999 WL 554584, at * 3 (E.D. Pa. July 16, 1999) ("a finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder.").

[17] *Boyer*, 913 F.2d at 111.

[18] *In re: Diet Drugs,* 294 F. Supp. 2d at 673-74.

[19] The Third Circuit has not expressly settled the question of whether to apply Fed. R. Civ. P. 20 or the state law counterpart when considering whether a party is properly joined. However, the Third Circuit has ruled that when evaluating a charge of improper joinder of defendants, the district court must resolve "any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (internal citations and quotations omitted). Although procedural rather than substantive laws are at issue here, the Court believes the same principles apply. Accordingly, the Court will apply California's more liberal joinder rules here.

common to all these persons will arise in the action."[20] Courts applying this rule have noted that California's joinder rules are interpreted liberally.[21] Here, plaintiffs allege that the same or similar fraudulent or otherwise tortious conduct by GSK caused their similar injuries, and although whether plaintiffs' claims are sufficiently related to support joinder under California law may be a close question, GSK has not persuaded the Court that there is *no* possibility that California would permit the joinder of the Delaware plaintiffs at issue.[22] Furthermore, on the record before it, the Court cannot find that the claims of the Delaware plaintiffs are distinct from the claims asserted by plaintiffs who are citizens of other states, which would support a finding of misjoinder of Delaware plaintiffs.[23] Therefore, on the record before it, the Court cannot conclude that the claims of the Delaware plaintiffs were *egregiously* misjoined.[24] The Court will remand the eight cases which include Delaware plaintiffs, and leave any necessary determination of improper joinder to the California state courts. However, if, upon remand, a California state court finds that the claims were misjoined under California law, or if the Delaware plaintiffs are severed for other reasons[25] or dismissed on grounds suggesting misjoinder, GSK may again seek to remove any action in which diversity jurisdiction is present.

*Class Action Fairness Act*

---

[20] Cal. Civ. Proc. Code § 378(a)(1).

[21] *In re Fosamax Prods. Liab. Litig.*, No. 06-1789, 2008 WL 2940560, at *8 (S.D.N.Y. July 29, 2008) (citing *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1128 (E.D. Cal. 2004).

[22] *See Id; Boyer*, 913 F.2d at 111.

[23] *See In re: Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 148 (S.D.N.Y. 2001).

[24] The Court notes that the district courts which examined misjoinder of plaintiffs in *Diet Drugs* and *Fosamax* concluded that the non-diverse plaintiffs had been misjoined, and the misjoinder was egregious. For example, in *Diet Drugs*, the court reasoned that "the [attempted] joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims . . . wrongfully deprives Defendants of their right of removal." 1999 WL 554584, at *3. Further, those courts noted that the doctrine of fraudulent misjoinder is "particularly relevant to large pharmaceutical product liability actions." *Fosamax*, 2012 WL 1118780, at *3 (citing *Diet Drugs*). However, neither of those courts was applying California's liberal joinder rules; the *Foxamax* ruling involved a case initially filed in Missouri state court, and the *Diet Drugs* ruling involved a case originally filed in an Alabama state court. GSK has not argued that the joinder of geographically diverse plaintiffs violates California's joinder rules.

[25] For example, in MDL 1871, multi-plaintiff cases are severed for case management purposes. Should the California court similarly require that all claims be severed, removal of the diverse plaintiffs would be appropriate.

CAFA tries to bring large, multi-plaintiff cases of national importance into federal courts. Both class actions and certain mass actions are removable under the statute.   Mass actions are treated as removable class actions when "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."[26] Under CAFA, only minimal diversity between plaintiffs and defendants is required. Therefore, if CAFA otherwise applies, even the eight cases which include a Delaware plaintiff would be removable.

GSK argues that removal of these multi-plaintiff Avandia cases to federal court was proper under CAFA. As the party seeking to remove a case to federal court under CAFA, GSK bears the burden to establish that CAFA is satisfied.[27]  This "is consistent with the well-established rule of deference to plaintiffs' choice of forum and the presumption against federal removal jurisdiction."[28]

Plaintiffs' counsel very much would like their clients' cases to remain in the California courts, and the question of whether this Court has jurisdiction is close precisely because counsel have vigorously and skillfully sought to evade CAFA through strategic pleading and filing. Here, guided by the plain language of the statute, plaintiffs deliberately filed multiple, similar suits, each on behalf of fewer than one hundred plaintiffs, and they do not explicitly propose to try the claims set forth in the separate complaints jointly. No one can seriously doubt that the plaintiffs' lawyers structured these cases to avoid federal jurisdiction. There is no sensible, case-management reason that, for example, Salim Beasley filed 33 cases on behalf of 2,008 plaintiffs. It would be a remarkable coincidence if there really were 33 distinguishable categories of cases, none of which

---

[26] 28 U.S.C. § 1332(d)(11)(B)(i).

[27] *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006).

[28] *Abrahamsen v. ConocoPhillips, Co.*, 503 F. App'x 157, 160 (3d Cir. 2012).

happened to have as many as 100 plaintiffs. But the Court need not feign naïveté: plaintiffs' counsel candidly admitted that they followed "the road map that Congress gave us when they enacted CAFA. Basically, they said if you [want] to deal with the hassle of filing multiple complaints, as long as there are fewer than 100 claimants, then you can avoid federal jurisdiction under CAFA. So we did that."[29]  Plaintiffs argue that the Court may not combine the separate lawsuits for purposes of satisfying CAFA's numerosity requirement, absent some evidence that plaintiffs propose the joint trial of those cases (e.g. by filing a motion to consolidate cases through trial).[30]

Notwithstanding plaintiffs' efforts to avoid federal jurisdiction under CAFA, GSK argues that by filing in the state of California, Plaintiffs have implicitly agreed that all of their cases shall be *coordinated through bellwether trials* in California's Avandia JCCP, and resolved by a single judge. This, according to GSK, is sufficient to confer CAFA jurisdiction over the claims. Therefore, GSK argues, the Court should ignore the form in which plaintiffs filed their cases, assume an intent to try all of a law firm's cases jointly, and find that the cases are removable under CAFA and properly a part of this MDL.[31]

The starting point for resolving this dispute is the statutory text: the question is whether the cases are (1) "civil action[s] . . . in which monetary claims of 100 or more persons" (2) "are proposed to be tried jointly."[32]  The mass action provision does not apply when "the claims are joined upon motion of a defendant."[33]  As noted above, no individual action was filed with 100 or more plaintiffs, and no plaintiff has filed a motion to join any of the actions for trial. A

---

[29] Hr'g Tr. Apr. 23, 2014 [MDL 1871 Doc. No. 3993] at 24.
[30] *Anderson v. Bayer Corp.*, 610 F. 3d 390, 393 (7th Cir. 2010).
[31] In arguing that these cases are properly before this MDL Court rather than a California federal court, GSK ignores 28 U.S.C. § 1332(d)(11)(C)(i), which provides that an action removed to federal court pursuant to CAFA could not thereafter be transferred to the MDL court, pursuant to the MDL statute, unless a majority of the plaintiffs in the action requested transfer.
[32] 28 U.S.C. § 1332(d)(11)(B)(i).
[33] 28 U.S.C. § 1332(d)(11)(B)(ii)(II); *accord Abrahamsen*, 503 F. App'x at 159.

straightforward reading of the statute, therefore, would suggest that the mass action provision does not apply, and the cases should be remanded to state court.

GSK proposes three analyses that would nonetheless qualify the actions as part of a removable mass action. First, it argues that the purpose of CAFA is to subject cases of national importance to federal jurisdiction; second, that CAFA's *class* action provision requires aggregating similar cases to determine numerosity and therefore the *mass* action provision should be read the same way; and third, by operation of California law, these cases will be transferred to the California JCCP for all purposes including trial, and that therefore by filing in California, Plaintiffs proposed their cases to be tried jointly within the meaning of CAFA. The Court addresses these arguments in turn.

GSK's argument that CAFA's legislative history argues against allowing plaintiffs to plead around federal jurisdiction is not, in itself, particularly strong. Congressional purpose is primarily expressed through legislative text; the Court will consider legislative context only to resolve any ambiguities or to confirm (or in rare cases, refute) the apparent plain meaning of the text. The Court is mindful of the environment in which CAFA was enacted and that the purpose of the statute was, broadly speaking, to expand federal jurisdiction over multi-plaintiff cases, but the expansion was not limitless. The Court also notes that GSK's legislative history argument fails to explain why the mass action provision only erodes the complete diversity requirement and not the amount-in-controversy requirement present in individual actions in federal court under section 1332.[34]

---

[34] *See* 28 U.S.C. § 1332(d)(11)(B)(i) ("[J]urisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."). According to a statement by eight Senators who brokered a compromise to bring CAFA into law, a prior version of the proposed law "would have treated all mass actions involving over 100 claimants as if they were class actions. The compromise makes several changes to treat mass actions more like individual cases than like class actions when appropriate. The compromise changes the jurisdictional amount requirement. Federal jurisdiction shall only exist over those persons whose claims satisfy the normal diversity jurisdictional amount requirement for individual actions under current law (presently $75,000)." 151

The Supreme Court's decision in *Standard Fire Insurance Co. v. Knowles*[35] is not to the contrary. That case held that a plaintiffs' lawyer could not stipulate that a proposed class would not seek CAFA's jurisdictional amount in damages for the simple reason that the lawyer lacked the authority to bind prospective class members. The case does not stand for the proposition that any action with the appearance of jurisdictional gaming is *ultra vires*.

Next, GSK argues that CAFA's *class* action provision (section 1332(d)(5)(B)) requires aggregating similar cases to determine numerosity and therefore the *mass* action provision (section 1332(d)(11) should be read the same way. However, in so arguing, GSK fails to address the statutory definition of mass action. "Mass action" is defined in section 1332(d)(11)(B)(i) with exceptions in section 1332(d)(11)(B)(ii), and those subparagraphs make no reference to section 1332(d)(5)(B). In other words, section 1332(d)(5)(B) tells us nothing about the statutory definition of a mass action; section 1332(d)(11)(B) alone clarifies (d)(11)(A)'s use of the term."[36]

The second problem with GSK's argument from section 1332(d)(5)(B) is that it misreads that very section. Section 1332(d)(5)(B) provides in relevant part: "Paragraphs (2) through (4) shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100." GSK reads this provision to mean that federal courts should aggregate all related class *actions* to determine the size of a class for CAFA purposes. But a more natural reading of the statute is that in a given action, where there are multiple proposed

---

Cong. Rec. S1076-01, at 1078. This compromise was in response to a letter from four Senators that argued "Mass tort actions that are not brought as class actions should be removed from the bill. The bill passed by the Judiciary Committee did not contain this language. . . . We want to write a rule that is as precise as possible—in this case, by encompassing actions that are truly class actions, while at the same time excluding any cases that are not." *Id.* Again, legislative history is appropriate to resolve textual ambiguities, not to create them, but it does appear that GSK's argument that CAFA mass action provisions should be coextensive with its class action provisions is unsupported by statements of the statute's proponents and drafters.

[35] 133 S. Ct. 1345 (2013).

[36] Of course (d)(11)(B) should not be read in such a way as to be inconsistent with (d)(5)(B) or to render either provision superfluous, but the Court's separation of the two provisions does no such thing; rather, it reinforces the distinction between class actions and mass actions that the statute creates.

*classes*, the Court should aggregate the plaintiffs in those classes. The section thus avoids one form of artful pleading—bringing one suit with multiple classes each with fewer than 100 plaintiffs. It also arguably reaches a situation where a lawyer consolidates multiple class actions into one proceeding with the result that the number of plaintiffs is greater than 100. But it does not reach the situation where there are multiple class actions, all proceeding separately, each with fewer than 100 plaintiffs.[37]

GSK's strongest argument is that there is an ongoing procedure in California that automatically consolidates all Avandia-related cases before the JCCP for all purposes, including at least bellwether trials, and possibly trials through a final verdict in all relevant cases. Therefore, the actions are "proposed to be tried jointly." But GSK has not demonstrated that this Court has jurisdiction over the plaintiffs that are the subject of this motion.

GSK first argues that certain plaintiffs' attorneys proposed that Avandia cases be handled pursuant to a procedure under the California JCCP. Those plaintiffs—not the ones before this Court—proposed that all pending and future Avandia cases would be consolidated before one California judge. A California judge granted the request for a JCCP, but it is unclear from GSK's opposition brief whether the order granting the JCCP in fact applies to cases filed after the coordination petition (such as the cases that are the subject of this motion), and it is also unclear whether the cases in the JCCP will proceed to joint trials. As GSK wrote in its Opposition, "As recently as May 10, 2013, Judge Berle [the JCCP judge] requested background information on plaintiffs in the cases pending before him 'to determine which cases should go to trial and the combination of cases, *if there are going to be multiple cases going to trial at the same time*.'"[38]

---

[37] This case is different from all these hypotheticals because the parties dispute the extent of the coordination of the actions and because the cases are concededly not class actions.

[38] Def. Memo in Opposition to Napoli Bern Motion, Doc. No. 3783 at 26 (emphasis added)(internal quotation omitted).

Far from sustaining its burden of showing that the Napoli Bern, Salim Beasley, and Restaino Siler plaintiffs have proposed a joint trial, GSK has shown only that some other plaintiffs possibly will have a joint trial.

GSK further argues that a joint trial is a foregone conclusion because under California Rule of Court 3.300(b), the parties are required to notify the California courts that "that the action or proceeding is related to another action or proceeding pending, dismissed, or disposed of by judgment in any state or federal court in California." But this notice requirement does not establish that the related cases will necessarily be consolidated for trial. Indeed, "the court, on notice to all parties, *may* order that the cases . . . be related and may assign them to a single judge or department,"[39] but the court is not required to do so. California's related case rule does not foreclose the possibility of separate trials.

As plaintiffs correctly argue, CAFA's mass action provision applies only when plaintiffs propose a joint trial. In the future, if plaintiffs propose a joint trial in these cases, they may be removable to federal court.[40] In the abstract, this Court accepts the basic logic of the argument that by filing these cases in California with knowledge that there was a pending JCCP, the plaintiffs impliedly proposed a joint trial, but GSK has failed to demonstrate that these cases will necessarily by operation of law be swept into the JCCP. Plaintiffs have not proposed that their cases be tried together, nor given any assent (implied or explicit) to an action by the JCCP court that would consolidate these cases for trial. Therefore, at this juncture, the Court cannot find that plaintiffs' lawyers have proposed a joint trial with more than 100 plaintiffs.

The precise issue of whether and when a mass action that is clearly related to an ongoing

---

[39] Cal. R. Ct. 3.300(h)(1) (emphasis added).
[40] They will likely not be removable to the MDL, 28 U.S.C. § 1332(d)(11)(C)(i), nor will the cases be removable if they are merely coordinated for pretrial purposes, § 1332(d)(11)(B)(ii)(IV), nor if the amount in controversy in the individual cases is less than $75,000, § 1332(d)(11)(B)(i).

coordinated proceeding in a state court should be treated as a class action under CAFA is one of first impression before this Court and one that the Third Circuit has not addressed. The parties do advance case law from other circuits that relate to the question before this Court, but in the final analysis, they are not squarely on point, because in each of those cases plaintiffs proposed a joint trial, and GSK has failed to establish that plaintiffs here have done so.

In a case involving transvaginal mesh claims, the Eight Circuit held that plaintiffs' requests for assignment of their cases, which involved more than 100 plaintiffs in total but not in any one filed case, to a single judge for management through trial to avoid inconsistent rulings, constituted a proposal to try all cases in an attorney's inventory jointly, whereas a request to consolidate or coordinate cases for pretrial proceedings would not.[41] In that case, however, the plaintiffs had specifically moved to have their cases specially assigned to a single judge to handle *through trial*, and this represented a departure from the City of St. Louis Circuit Court's typical practice of combining claims involving common questions of law and fact before a single judge for pretrial purposes, but assigning the cases to other judges for resolution of pre-trial motions and for trial.

In a similar case before the Ninth Circuit (now under review by the circuit *en banc*), the court held that a petition seeking coordination of claims before a single state court judge *through trial* was *not* a proposal for those actions to be tried jointly because the petition focused more heavily on pretrial issues.[42]  Although the Ninth Circuit's decision was not contrary to the one the Court reaches here, this Court was more persuaded by the reasoning of the dissent as it applies to a case where plaintiffs actually proposed a joint trial. However, in any event, the facts are different here; the facts before this Court do not establish that plaintiffs have proposed a joint trial, as discussed above.

---

[41] *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1163 (8th Cir. 2013).
[42] *Romo v. Teva Pharms. USA, Inc.*, 731 F. 3d 918, 923-24 (9th Cir. 2013) (rh'g *en banc* granted, 742 F. 3d 409 (9th Cir. 2014)).

Finally, GSK relies on a Seventh Circuit case for the proposition that a proposal for a joint trial can be implicit.[43]  GSK argues that plaintiffs themselves requested a joint trial by filing suit in California, rather than in some other state, knowing the suits would be swept into the Avandia JCCP. However, in *Abbott Laboratories*, plaintiffs actually sought "consolidation of their cases 'through trial' and 'not solely for pretrial proceedings.'"[44]  The only reason that case discussed implicit proposals for a joint trial was that plaintiffs argued that its motion for consolidation was not a proposal for a joint trial. Since there is no motion for consolidation in this case, *Abbott Laboratories* is not squarely on point.

CAFA's mass action provision is narrower than its class action provisions. CAFA gives federal courts jurisdiction over plaintiffs in a mass action only where more than 100 plaintiffs are proposed—by those plaintiffs—to be tried jointly. If the same plaintiffs' lawyer brings multiple actions with fewer than 100 plaintiffs, those cases will not be mass actions under CAFA unless the plaintiffs, explicitly or implicitly, propose a joint trial. GSK has not met its burden of demonstrating that plaintiffs have done so here.

Strict rules can be gamed. Jurisdictional rules are strict. It is no surprise that litigants seek to game jurisdictional rules. Here, plaintiffs are gaming the rules and winning in part. This Court cannot rewrite jurisdictional rules, and if it is unjust that artful pleading puts certain cases out of this Court's reach, the remedy is for Congress to amend CAFA.

*Conclusion*

For the reasons set forth herein, the eight cases that name a Delaware plaintiff will be remanded to California state court. The motions to remand are denied as to all other cases.

---

[43] *In re Abbott Labs., Inc.,* 698 F.3d 568, 572 (7th Cir. 2012).
[44] *Id* at 573.